UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

TRAVIS K. BURTON,

    Plaintiff,

v.                                                    Case No. 3:22cv6325-MCR-HTC

CAPTAIN HAIR, et al.,

    Defendants.
_____/

REPORT AND RECOMMENDATION

Plaintiff Travis K. Burton, a prisoner proceeding *pro se* under 42 U.S.C. § 1983, sues two Santa Rosa Correctional Institution ("SRCI") officers, Captain Hair and Officer Hayes, for retaliation and use of excessive force. ECF Doc. 11. Pending before the Court is Defendants Hair and Hayes' motion for summary judgment. ECF Doc. 40. Plaintiff responded in opposition, ECF Doc. 46, and Defendants filed a reply, ECF Doc. 47. After considering the parties' submissions, the record, and the relevant law, the undersigned recommends the motion for summary judgment be granted.

**I.    Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual

dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). An issue of fact is "material" if it might affect the outcome of the case under the governing law, and it is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* The Court must review the evidence, and all factual inferences reasonably drawn from the evidence, "in the light most favorable to the non-moving party." *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993) (citation omitted). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992) (citation omitted).

## II. Facts

On August 26, 2021, Plaintiff was housed in SRCI and placed on property restriction. ECF Doc. 11 at 7. When his property was returned on September 2, 2021, Plaintiff's Jewish religious materials, including his Bible,[1] were missing. *Id.* This resulted in Plaintiff yelling at officers to return his Bible, the events of which were captured by a handheld video camera. ECF Doc. 40-2, Exhibit B.

---

[1] In his deposition, Plaintiff specified the Bible he is referring to is the Torah. ECF Doc. 40-1 at 11:22 – 12:2.

The video evidence shows Captain Hair approached Plaintiff's cell and gave him a final order to cease his disruptive behavior, cease kicking on his cell door, and cease yelling. Exhibit B, Part 1 at 1:58 – 2:18. Plaintiff speaks over Hair, demanding the return of his Bible. Over the next few minutes, Plaintiff continues to yell, making statements about how he is "homicidal/suicidal" and threatens that "if anybody comes into the room," he will "kill without his Bible."[2] *Id.* at 2:18 – 5:25.

Noting Plaintiff has failed to comply with orders to stop yelling, Hair indicates chemical agents will be used on Plaintiff. *Id.* at 5:25 – 5:40. Officers attempt to open Plaintiff's cell door to administer chemical agents, but he holds it closed. *Id.* at 6:17 – 6:42. Hair then opens the cell door flap and Sergeant Kunka attempts to spray chemical agents through it; however, Plaintiff uses his hands to divert the spray from the chemical agents and some of it ends up on the front of the cell. *Id.* at 6:42 – 6:50. Hair is then able to partially open the cell door, and Kunka quickly sprays chemical agents through the opening on to Plaintiff before the officers close the cell door. *Id.* at 6:49 – 6:52. Plaintiff paces around his cell for the next several minutes, periodically speaking in tongues and English.[3] *Id.* at 6:52 – 10:37. Hair again orders

---

[2] Plaintiff can be seen and heard repeatedly yelling about not having his property, particularly his Bible, and saying that someone "will lose their life." ECF 40-2, Exhibit B, Part 1 at 3:12.
[3] The officer holding the camera was also affected by the chemical agents and can be heard coughing, sneezing, and wheezing.

Case No. 3:22cv6325-MCR-HTC

Plaintiff to cease his disruptive behavior, but Plaintiff continues to pace and talk. *Id.* at 10:37 – 13:10.

When Captain Hair orders Plaintiff to submit to hand restraints for a decontamination shower, Plaintiff refuses, saying "fuck that." *Id.* at 13:10 – 13:23. Plaintiff continues to make statements about wanting his Bible. *Id.* at 13:23 – 14:51. Hair gives Plaintiff a final order to submit to hand restraints; Plaintiff does not respond to the order and resumes yelling about his Bible. *Id.* at 14:51 – 19:00. Hair again asks Plaintiff if he will submit to hand restraints and exit his cell for a decontamination shower but Plaintiff refuses. *Id.* at 20:31 – 20:53.

Sergeant Kunka sprays chemical agents into the cell a second time. *Id.* at 21:07 – 21:13. Afterwards, Plaintiff continues to intermittently yell about the loss of his Bible and request its return. *Id.* at 21:13 – 24:00. Captain Hair asks Plaintiff if he will submit to an unclothed search, hand restraints, and to exit his cell for a decontamination shower; Plaintiff responds by making several statements about his Bible, the precise nature of which cannot be heard. *Id.* at 28:14 – 28:31. Shortly thereafter, Hair asks Plaintiff if he will comply with orders but there is no response. *Id.* at 29:44 – 29:49. After Sergeant Kunka sprays chemical agents into Plaintiff's cell a third time, *id.* at 30:10 – 30:18, Captain Hair asks if Plaintiff will submit to hand restraints for a decontamination shower, *id.* at 30:30 – 30:40. Plaintiff responds by saying all he wants is his Bible. *Id.* at 30:40 – 30:42.

A nurse appears at Plaintiff's cell, explains the potential consequences if chemical agents are not washed off in a timely manner, and encourages him to take a decontamination shower. *Id.* at 37:16 – 38:23. After explaining to the camera that he has received authorization for a cell extraction, Hair asks Plaintiff to submit to hand restraints. *Id.* at 38:34 – 39:29. Plaintiff again asks for the return of his Bible. *Id.* at 39:29 – 39:33.

The cell extraction team, which included Officer Hayes, arrives at Plaintiff's cell. Exhibit B, Part 2 at 2:40. Captain Hair orders Plaintiff to submit to an unclothed search, hand restraints, and a decontamination shower, and warns him he will be extracted from his cell if he refuses. *Id.* at 2:55 – 3:10. Plaintiff does not respond; Hair opens the cell door flap to show Plaintiff is not presenting his hands to be handcuffed. *Id.* at 3:11. Hair opens the cell door, then the cell extraction team enters and crowds around Plaintiff, who is laying on the floor. *Id.* at 3:29 – 4:39. Hair yells for Plaintiff to quit resisting and allow the officers to put restraints on him. Hair asks several times if hand restraints have been placed on Plaintiff, and officers tell him "no" a couple of times. Eventually, the officers confirm hand and leg restraints have been placed on Plaintiff; he is brought to his feet and exits the cell about one minute and fifteen seconds after the cell extraction team enters. *Id.* at 4:44. He is taken to the shower and rinsed off. *Id.* at 5:07. Plaintiff ignores Hair's instruction that he place his head underneath the water; two of the cell extraction

team members, including Hayes, move Plaintiff's head under the water. *Id.* at 5:36. Plaintiff is removed from the shower, his contaminated boxers are removed and replaced with clean boxers, and he is escorted to medical to receive a post-use-of-force examination. *Id.* at 8:57 – 18:24. Plaintiff is subsequently escorted to a new cell in J Dorm. Exhibit B, Part 3.

**III.   Discussion**

Defendants argue they are entitled to summary judgment on Plaintiffs' Eighth Amendment excessive force claim because the video does not support Plaintiff's allegations and any force that was used was reasonable and necessary. For the reasons set forth below, the undersigned agrees.[4] Defendants also argue they are entitled to summary judgment on Plaintiff's First Amendment claim because Plaintiff's belligerent verbal demands for his Bible, coupled with threats of violence, are not protected speech. Once again, the undersigned agrees.

**A.   Eighth Amendment - Excessive Force**[5]

In Eighth Amendment excessive force claims, the "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather 'whether force

---

[4] Because the undersigned finds judgment should be entered, the undersigned does not address Defendants' qualified immunity argument or their arguments that Plaintiff cannot recover compensatory or punitive damages as a matter of law.

[5] Plaintiff's response states his Eighth Amendment claim "was barred in a prior order" and the Court "issued a prior order accepting this case as a First amendment violation case only." ECF Doc. 46 at 6. This is incorrect; after considering Defendants' motion to dismiss, the Court allowed both the First Amendment retaliation claim and Eighth Amendment excessive force claim to proceed. ECF Doc. 27.

was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).  In determining whether force was applied maliciously and sadistically to cause harm, a court considers: (1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of the injury inflicted upon the prisoner; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them; and (5) any efforts made to temper the severity of a forceful response.  *Whitley v. Albers*, 475 U.S. 312, 321 (1986).

As discussed below, applying the *Whitley* factors to the undisputed evidence–namely, what is seen in the video evidence–the Court does not find excessive force was used.  The video evidence shows a recalcitrant inmate who refused, despite numerous verbal requests, to comply with Captain Hair's lawful orders.  Plaintiff also verbally threatened his safety and the safety of the officers if they entered the cell.  In fact, he tried to keep officers from opening his cell door, tried to grab the chemical agent spray can, and refused to come to the door to be placed in hand restraints for a decontamination shower.  The video evidence further blatantly contradicts several of Plaintiff's allegations, including that Captain Hair told Officer

Hayes to "whip" him and that Officer Hayes slammed his head into the shower nozzle during the decontamination shower.

      i.      **Chemical Agents**

Plaintiff alleges Defendant Hair used excessive force when he ordered Plaintiff be sprayed with chemical agents. However, considering the *Whitley* factors and the video evidence, Plaintiff has failed to establish an Eighth Amendment violation with respect to the use of chemical agents.

First, although Plaintiff suggests he simply requested the return of the Bible that had been taken from him, his actions justified the use of force for all three applications of chemical agents. For the initial use of chemical agents, Plaintiff was yelling, refusing orders to cease his disruptive behavior, and making statements about how he would "kill without his Bible." For the second and third uses of chemical agents, Plaintiff refused to submit to hand restraints and exit his cell for a decontamination shower.[6] "As a general matter, prison officials are authorized to use force when a prisoner fails to obey an order" and pepper spray "is an accepted non-lethal means of controlling unruly inmates."[7] *Jacoby v. Mack*, 755 F. App'x

---

[6] Defendants note prison regulations provide that "[i]nmates are not allowed to refuse a shower or refuse the decontamination of their cell after exposure to chemical agents." Fla. Admin. Code r. 33-602.210.

[7] Even if prison officials were improperly depriving Plaintiff of his religious materials, that deprivation does not give Plaintiff an excuse for engaging in disruptive behavior. Instead, Plaintiff should have filed grievances regarding the deprivation. Furthermore, although Plaintiff characterizes Captain Hair's orders as "unlawful," there is nothing unlawful about a correctional

888, 898 (11th Cir. 2018) (citation omitted); *see also Muhammad v. Sapp*, 494 F. App'x 953, 957-58 (11th Cir. 2012) (use of chemical agents on inmate who refused to shave did not qualify as excessive force); *Jones v. Shields*, 207 F.3d 491, 497 (8th Cir. 2000) (concluding use of pepper spray after inmate refused a direct order from his supervisor and questioned a guard's order was not malicious or sadistic).

Second, because chemical agents are "designed to be disabling without causing permanent physical injury and [are] a reasonable alternative to escalating a physical confrontation," their use is not disproportionate to the need to control an inmate who has failed to obey an order. *See Jacoby*, 755 F. App'x at 898. Notably, only one of the sprays was aimed directly at Plaintiff and that was because he tried to grab the can from the officers. The other two sprays were simply inside the cell and not near Plaintiff's body.

Third, while Plaintiff's disruptive behavior and refusal to comply with orders may not have posed a significant threat in these circumstances, prison officials are allowed to ensure inmates behave in an orderly manner within the prison environment and comply with orders.

---

officer ordering an inmate to stop yelling or to submit to hand restraints to be removed from his cell. *See Pearson v. Taylor*, 665 F. App'x 858, 864 (11th Cir. 2016) ("Officers are not required to convince every prisoner that their orders are reasonable and well-thought out before resorting to force.") (citation omitted).

Finally, prison officials made efforts to temper the severity of their use of force by giving Plaintiff several opportunities to comply with verbal orders, warning him prior to using the spray that chemical agents would be used if he did not comply, minimizing the amount of spray that was used, and providing Plaintiff with a decontamination shower and post-use-of-force examination after using the chemical agents.

Considering the above factors, the evidence does not show Defendant Hair used chemical agents maliciously and sadistically to cause Plaintiff harm. Instead, it indicates Hair used chemical agents in a good-faith effort to get Plaintiff to cease his disruptive behavior and comply with orders. Thus, summary judgment should be granted on the excessive force claim based on the use of the chemical agents.

### ii.     Cell Extraction

Plaintiff also takes issue with the use of a cell extraction team and the events that occurred during the cell extraction. As an initial matter, the undersigned finds the use of a cell extraction team to be reasonable and necessary given Plaintiff's failure to comply with orders to submit to hand restraints and exit his cell for a decontamination shower. *See Gilley v. Settlemires*, 3:20cv1006-MCR/HTC, 2021 WL 2722807, at * 6 (N.D. Fla. Apr. 22, 2021) (finding use of extraction team to be necessary where plaintiff failed to comply and officer needed to remove plaintiff from the cell for cleaning and decontamination). Also, having reviewed the video,

the undersigned does not find that any force used during the extraction was excessive or "maliciously or sadistically" applied. *Hudson,* 503 U.S. at 7.

Before entering the cell, each of the extraction team members announced their name, position, and responsibility. Officer Hayes was the number 1 man and it was his responsibility to enter the cell first and immobilize Plaintiff with his bodyweight and shield by pinning him to the floor or wall so the other team members could place restraints on Plaintiff. After reading written instructions to the team, Captain Hair told the team that Plaintiff had threatened to injure anyone who enters his cell so they needed to take precaution to protect themselves. Captain Hair also advised the team that it was not known whether Plaintiff had any weapons. Before breaching the cell door, Captain Hair once again asked Plaintiff if he would submit to hand restraints and waited for a response. Plaintiff, however, did not comply and Captain Hair confirmed this by opening the door flap and showing the camera that it was empty. Additionally, Officer Hayes told the team members he saw Plaintiff lying by the right side of the door. The team breached the cell door at 3:29 on the video.

Once the door is breached, all the officers immediately gathered on top of Plaintiff and pinned him to the ground. Captain Hair can be heard directing Plaintiff to stop resisting and also to let the officers put the restraints on him. Captain Hair asked the officers twice if they had placed hand restraints on Plaintiff, and they said "no." It was not until one minute into the extraction process that officers announced

that Plaintiff was fully restrained. At that point, Captain Hair instructed the officers to assist Plaintiff to his feet and all of the officers immediately started rising off the floor. Captain Hair then instructed Plaintiff to get to his feet, which he did, and the officers escorted Plaintiff to the decontamination shower. Plaintiff was escorted out of the cell at 4:46 on the video.

Plaintiff alleges in the amended complaint that during the cell extraction, Captain Hair ordered Officer Hayes to "whip [Plaintiff's] ass" and Hayes "entered the cell, jumped on [his] back, and commenced to punching [him] in [his] head, face, [and] eyes, while fully restrained." ECF Doc. 11 at 7-8. However, the video does not corroborate either of these allegations. The entire extraction is caught on video and at no point before or during the extraction did Captain Hair tell Officer Hayes or any of the extraction team members to "whip [Plaintiff's] ass!" Also, Plaintiff is clearly not restrained when officers breached the cell door; his failure to submit to hand restraints was the very reason the cell extraction team was utilized in the first place. Once officers announced that Plaintiff was fully restrained, they immediately got off the floor and helped Plaintiff to his feet. The video does not show Hayes punching Plaintiff in the head, eyes, or face while he was fully restrained.

Thus, when considering the *Whitley* factors, no reasonable jury could find that Officer Hayes used excessive force during the cell extraction. First, there was clearly a need for an application of force given Plaintiff's non-compliance, his prior threats

of violence to himself and to the officers, and his failure to submit to hand restraints. Second, the relationship between the need and the amount of force that was used was reasonable. Notably, the entire extraction took 1 minute and 15 seconds from the time the cell was breached until Plaintiff was led out of the cell, and officers ceased all force once officers announced that Plaintiff was fully restrained. *See Gomez v. Lister*, 2022 WL 562266, at * 17 (M.D. Fla. Feb. 23, 2002), *aff'd,* No. 22-10808, 2022 WL 16776248 (11th Cir. Nov. 8, 2022) (granting summary judgment in favor of Defendants on claim of excessive force during cell extraction where Plaintiff suffered only bruises and swelling, with no documented eye damage, refused to comply with officers' orders, and "a mere two minutes elapsed" from the time the team entered the cell to the time plaintiff was restrained and standing"). Indeed, the video shows that despite the tense nature of the circumstances, the extraction team members, including Officer Hayes, were calm and professional and acted swiftly to fully restrain Plaintiff.

Third, while Plaintiff can be seen with some swelling and redness on the left side of his face, such injuries, which did not require any immediate treatment other than cleaning the wounds and a bandage, weigh against a finding of excessive force.[8] Fourth, given Plaintiff's repeated threats to kill any officer who entered the cell, his

---

[8] Although Plaintiff also contends he suffers from headaches, sinus issues, and decreased vision, he testified that he does not know whether these conditions were caused by the extraction or the chemical agents. *See* ECF Doc. 40-1 at 33:6-12.

prior attempt to grab the chemical spray can, the fact that he was unrestrained when the officers entered the cell, and that it was not known whether Plaintiff may have had a weapon, Plaintiff clearly posed a safety threat to himself and the officers.

Finally, officers tempered the situation by giving Plaintiff an opportunity to submit to hand restraints before breaching the cell, by immediately taking Plaintiff to a decontamination shower and to medical for an examination and treatment, and by ensuring that the videotape documented the entire sequence of events, including all of Plaintiff's injuries.[9]  *See Butler*, 2021 WL 4279555, at *3.  During the one-hour episode, Plaintiff was given multiple opportunities by Captain Hair to simply comply, but "Plaintiff continued to refuse orders and became increasingly disrespectful and aggressive," and "only when chemical agents failed to disable Plaintiff's resistance and force his compliance did officers have to resort to physical force to restrain Plaintiff."  *See Gomez*, 2022 WL 562266, at *17.

In sum, despite Plaintiff's sworn statement,[10] it is clear from the video footage that any force used by the cell extraction team was "applied in a good-faith effort to

---

[9] Captain Hair specifically asks officers to spin Plaintiff around so the video camera can record all visible injuries and tells the camera operator to ensure he gets all angles of Plaintiff's body so all injuries could be seen.  Exhibit B, Part 2 at 17:50-18:04.

[10] "[A]lthough the court will consider the allegations in a *pro se* plaintiff's sworn complaint as summary judgment evidence, *Smith v. Mobile Shipbuilding & Repair, Inc.*, 663 F. App'x 793, 797–99 (11th Cir. 2016), those allegations, alone, are '[a] mere scintilla of evidence,' which is not enough." *Petit v. M. Morrison,* No. 3:19cv4921-RV-HTC, 2021 WL 640247, at *5 (N.D. Fla. Jan. 13, 2021), *report and recommendation adopted sub nom. Petit v. Morrison,* No. 3:19cv4921-RV-HTC, 2021 WL 634742 (N.D. Fla. Feb. 18, 2021).

maintain or restore discipline." *Hudson*, 503 U.S. at 7. The videos clearly show that some amount of force was justified and needed for a legitimate security purpose; namely, to place restraints on Plaintiff so he could be transported to a decontamination shower. The videos clearly show that Plaintiff suffered minimal injuries which were consistent with a cell extraction. The videos also establish that Plaintiff behaved aggressively towards officers and had refused to cooperate for over an hour – behaviors which contributed to the need for force and contradicted Plaintiff's position that no force (no chemical agents, no extraction) was needed because all he wanted was his Bible. "While the videos do not show every move made" during the extraction "they do document the scenario sufficiently to give an objective view of what happened." *Gomez*, 2022 WL 562266, at *18.

Thus, based on the video evidence, no reasonable jury could find that Plaintiff suffered a violation of his Eighth Amendment rights when he was extracted from the cell. *See id.* at *17 ("Although [the Court] cannot pinpoint with precision the amount of force used by [Defendants], the fact that there was no more than minimal injury, that some amount of force was justified under the circumstances, and that the force was used for a legitimate security purpose persuades [the Court] that the evidence in this case raises only a 'mere dispute over the reasonableness of the particular use of force' and could not support 'a reliable inference of wantonness in the infliction of pain.'") (citing *Brown v. Smith*, 813 F.2d 1187, 1189-90 (11th Cir. 1987) (quoting

*Whitley*, 475 U.S. at 322)); *Butler v. Sec'y, Fla. Dept. of Corr.*, 2021 WL 4279555, at *3 (11th Cir. Sept. 21, 2021) (finding district court did not err in granting summary judgment in favor of defendants on claim that excessive force was used during cell extraction even though "the video does not clearly show what happened" once plaintiff and the team members moved to the back of the cell, where the video showed the team as "relatively calm and professional while attempting to fully restrain [plaintiff]," force ceased once plaintiff was handcuffed, officers videotaped the entire cell extraction and its aftermath, and immediately took plaintiff to receive medical examination).

### iii. Decontamination Shower

Plaintiff also alleges Defendant Hayes "slammed [his] face into the shower nozzle several times" during his decontamination shower. ECF Doc. 11 at 8. However, the video evidence blatantly contradicts this allegation. The video clearly shows Hayes did not slam Plaintiff's face into the shower nozzle during the decontamination shower. Exhibit B, Part 2 at 5:02 – 9:06. Indeed, the shower nozzle is located well above Plaintiff's head. Because the video evidence refutes Plaintiff's allegation of excessive force during the decontamination shower, summary judgment should be granted as to that claim. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should

not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

## B.  First Amendment - Retaliation[11]

Plaintiff also claims Defendants violated the First Amendment; he asserts Defendants' use of force was retaliation for his request for the return of his Bible. "The First Amendment forbids prison officials from retaliating against prisoners for exercising the right of free speech." *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003) (citing *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989)).  To prevail on a First Amendment retaliation claim, an inmate must establish: "(1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008) (citation omitted).

Here, Plaintiff has not established he engaged in constitutionally protected speech.  An inmate's speech "is not protected if affording protection would be

---

[11] In Plaintiff's response, he pointed out that Defendants did not address his First Amendment claim in their motion, prompting them to raise the issue in their reply.  Because this was an issue raised by the Plaintiff, the undersigned finds it to be the proper subject of a reply.  *See* Fla. N.D. Loc. R. 56.1(D) (noting that the moving party should file a reply "if the opposing memorandum raise new matters not addressed in the original supporting memorandum").  The undersigned also finds it unnecessary to allow Plaintiff an additional opportunity to file a sur-reply because (1) Plaintiff did not move to do so and (2) there is no dispute based on the video evidence the speech at issue was not protected speech and was also not the cause of the use of force.

inconsistent with the inmate's 'status as a prisoner or with the legitimate penological objectives of the corrections system.'" *Smith*, 532 F.3d at 1277 (quoting *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).  Plaintiff argues his verbal requests for the return of his Bible constitute protected speech.

The undersigned disagrees.  Plaintiff did not file a written grievance regarding the loss of his Bible before the events of September 2, 2021.[12]  *See Hoever v. Caper*, 2014 WL 6674490, at *2 (N.D. Fla. Nov. 25, 2014) (stating there are ample reasons which support limiting the protected speech of a prisoner to the "contours of filing a grievance" which include establishing an evidentiary record and eliminating disputes over whether a verbal complaint was given belligerently in light of the fact that a prisoner is not free to use any words he chooses when addressing prison officials); *see also Martin v. Hurley*, 2014 WL 7157336, at *2 (E.D. Mo. Dec. 15, 2014) (stating "prisoners have no constitutionally protected right to confront staff and discuss issues with them").  As shown by the video evidence, Plaintiff's verbal demands for the return of his Bible were aggressive, continued after he had been ordered to stop, and were accompanied by threats to "kill."  Affording protection to Plaintiff's "speech" would be inconsistent with legitimate penological objectives; thus, he cannot establish a claim for retaliation.  *See Davis v. United States*, 272 F.

---

[12] Plaintiff did file a grievance requesting the return of his Bible on September 17, 2021.  ECF Doc. 11 at 10.

Case No. 3:22cv6325-MCR-HTC

App'x 863, 867-68 (11th Cir. 2008) (expressing doubt that inmate's verbal complaint, which was "given belligerently, while using curse words, and continued even after [the inmate] was ordered to leave," was protected speech).

Even assuming some parts of Plaintiff's verbal demands for the return of his Bible were protected speech, he cannot establish a causal connection between Captain Hair's actions and his speech, as the video evidence shows Captain Hair ordered the use of chemical agents and a cell extraction because Plaintiff was being disruptive and refusing to comply with orders. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 399 (6th Cir. 1999) ("If the defendant can show that he would have taken the same action in the absence of the protected activity, he is entitled to prevail on summary judgment."); *Davis*, 272 F. App'x at 868 ("Even assuming *arguendo* that an inmate engages in constitutionally protected speech when he lodges a verbal complaint about his cell assignment, Davis still has presented no evidence to support a finding that he was disciplined for complaining about his cell assignment. Rather the undisputed record shows that Stewart prepared the incident report that resulted in Davis's discipline because Davis was being belligerent, cursing and refusing to leave when ordered to do so."). And there is no evidence showing Officer Hayes was aware of Plaintiff's requests before participating in the cell extraction. *See Farrow*, 320 F.3d at 1248-49 (affirming grant of summary judgment on retaliation claim when evidence did not show alleged retaliator had knowledge of the inmate's

protected speech). Thus, summary judgment should be granted in favor of Defendants on Plaintiff's First Amendment retaliation claim.

## IV. Conclusion

Accordingly, it is RECOMMENDED:

1. That Defendants' motion for summary judgment, ECF Doc. 40, be GRANTED.

2. That final judgment be entered in favor of Defendants and against Plaintiff.

3. That the clerk close this file.

At Pensacola, Florida, this 28th day of September, 2023.

/s/ Hope Thai Cannon
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within **fourteen (14) days** of the date of the Report and Recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1.

Case No. 3:22cv6325-MCR-HTC